I am Tori Yaklik, representing Dr. David Rempel, plaintiff's appellant. I'd like to reserve about five minutes for rebuttal. Okay, counsel, please keep track of your timing. Would you please keep your voice up so we can hear you? Yes. Thank you. I understand that it's not a microphone. It's not a microphone, exactly. I'd like to begin by emphasizing that this case is not about the disclosure of trade secrets or proprietary information. And you won't hear UPS counsel argue otherwise. Dr. Rempel's grift-forced study contains no trade secret or private commercial information at all. This case is about whether a company that made no effort to limit public access to the courtroom during any of Dr. Rempel's lengthy testimony at trial and to this day has not made any effort to restrict public access to Dr. Rempel's court houses around the country, whether that company can now restrict Dr. Rempel's effort to further disseminate his study. Why does that matter, counsel, the fact that UPS had agreed to allow the results of the study to be used during the litigation? Why does that hamper their ability to prevent further disclosure? The agreement does not, and the cases are uniform on this point. The agreement does not say that UPS has the right to restrict post-trial dissemination if it makes no effort during trial to restrict. Does it say otherwise? Does it say unless you make efforts to restrict further dissemination, you can't later make that claim? It doesn't say anything one way or the other. That's right. It doesn't, and the cases have uniformly held that where the agreement is silent on that point, the interests in favor of disclosure prevail, that a company that is interested in maintaining secrecy post-trial must act consistently with that interest during trial or it waives its right to post-trial restriction of information. Those cases to which you're referring, did they have an agreement of the same type that was in this case? Because you've already said this is not a confidentiality agreement. So didn't those cases involve confidentiality agreements? Those cases, I actually have pulled some of the confidentiality agreements or protective orders entered in those cases. The two cases that are closest to this case are the Little John v. Fett and the National Polymer Products case. The National Polymer Products case, which was the Sixth Circuit 1981 case, the protective order provided that all information, including test information and quality control reports and test results produced by Borg-Warner, so it doesn't, it's not limited to confidential information. It's limited to all information that is produced by Borg-Warner in that litigation, could be used, let me go on and read it, I'm actually quoting from page 420 of the decision. Any such person obtaining access to this information shall not reveal it to or use it for any purpose other than for preparation and trial of this action. Okay, that was a protective order, not an agreement between the parties, right? The protective order comes about by a private agreement negotiated between the parties that then gets an additional layer of protection from the court. This agreement never was submitted to the court for it. Let me ask you this, the underlying agreement for the Little John case, was it a confidentiality agreement? The Little John was the same thing. It was a privately negotiated confidentiality agreement. This was called a confidentiality agreement. But I thought you just said we're not talking about a confidentiality agreement. We are not talking about confidential information, but we are talking about the interpretation of an agreement called a confidential information and intellectual property agreement. So both the agreement is UPS is attempting to extend it to information that is not confidential, but just like the agreements in these other cases, the Borg-Warner agreement is not on its terms limited to confidential or trade secret information, nor was the agreement in the Little John v. Thick case. The Borg-Warner agreement that you're talking about, what's the name of that case? The Borg-Warner is the National Polymer Products v. Borg-Warner, 641 F. 2nd. So you have a Third Circuit case and a Sixth Circuit case. Do you have anything from this circuit? There is no decision from this circuit, and I shepherdized again Sunday, and there is still no decision. However, there is no court in any circuit that has ever upheld a party's right to restrict post-trial dissemination of information where they exercised or attempted no effort to restrict control of that information during trial. There is no decision that would do that. So this court— You appear to have skipped to the waiver argument. Yes. So in this argument, you're assuming that there is an agreement. They could not—there's also the aspect of my claim it should not be disclosed. That's the last sentence. Yes. And you're saying, assuming that that was binding, they waived that contractual obligation. Exactly. You know, the first argument that we made in our briefs, and an argument that I still believe is true, is that the agreement by its terms never did apply to Dr. Rumpel's study. The study is 17 pages. It contains one-half of one page of descriptions of the dyad machine, and all it says is the dyad is this weight, this center of balance, and this thickness. She has no interest in mentioning the dyad by name or UPS by name in a published study, and the version of the dyad that is discussed in the study was retired by UPS in 1997-1998. So the agreement at issue, which is, again, it's termed a confidential information and intellectual property agreement, But that was the initial label that was given to the earlier stages of the agreement. Isn't that true? That's correct. And then later there was negotiation between counsel to add the last sentence. And it was added. As best counsel can recall. Yeah. You don't even get to that point of the analysis. If you can look at the agreement, and within the four corners of the agreement, assess what it means. Well, the agreement appears to me to refer to two different kinds of information. One is confidential, and in the last sentence, also, it refers to results of the inspection by claimants. If you go back to the earlier, to the first page of the agreement, it's clear that the agreement was devised in order to allow plaintiffs to inspect the dyad. That's what it says on page one of the agreement. So the notion of inspection was contemplated in the original draft of the agreement. But the last sentence of paragraph one talks about the results of that inspection. That's right. And so why is that inconsistent in your view? That sentence falls within a paragraph titled confidential information. But the title of the paragraph is not controlling over the language of the provision, is it? It is sometimes. Is that your argument, that it is in this case, that the title use of confidential information takes precedence over the language of the sentence that was added? Absolutely. Why? Because contracts are often written with a statement, a disclaimer, that the titles of paragraphs shall not be controlling on interpretation. No such disclaimer was added to this contract. How about the case law that talks about interpretation of contracts, which also makes that point that the title of the section is not controlling. It's the language of the section that's used to interpret the contracts. Well, it would have been very unusual for Plaintiffs' Counsel to have entered into an agreement that restricted the flow of non-confidential information. And the lawyer who negotiated this language has submitted a declaration saying, I never would have intended that. I never contemplated that. And that would be very unusual. But then what would be the purpose of putting this language in if you were not talking about non-confidential information? Because the prior sentence talks about confidential information, so there would be no need to even have this language unless you were talking about non-confidential information that had already been released in the context of the trial. And so aren't we to construe contracts so as to give effect to every single provision, and wouldn't we violate that premise if we take this language out? No. The first sentence, the context in which this contract was formed was there were two cases filed at that time, and Plaintiffs' Counsel contemplated that there would be additional cases filed. The first sentence is extremely restrictive, and Plaintiffs' Counsel was concerned that UPS would object to use of the information obtained through production of the dyad in any subsequently filed cases. And so the second sentence was the product of further negotiations between UPS and Plaintiffs' Counsel to ensure that in subsequent product liability cases, the results of the inspection could be used. He still had in his mind that they were talking about confidential information. Otherwise, as he says, I would never have agreed to something that restricted the flow of non-confidential information. But that doesn't make sense, because the first sentence specifically talks about confidential information. Okay. If we're going to go to how you interpret contracts, one of the overriding rules of contract interpretation is that contracts are construed to best serve the public interest, and the public interest disfavors secrecy. Or is that in the hierarchy of statutory interpretation precepts? It's right there with ambiguity is construed against the drafter. And what about to effectuate the intent of the parties and to make sense of all the provisions? Where do those fit within the hierarchy of statutory interpretation? I think those are in the same mix. So we have to look at all of them. So we're back where we started. So we're back. So let's go back to waiver. And regardless of how you interpret this narrative. Is that your strongest position? Pardon? Is waiver your strongest argument? I think it is because I think the cases are unanimous that in a situation like this there is waiver. There is no case, again, there is no case that finds that where a party completely, that acts completely inconsistently with an interest in secrecy at trial can then impose post-trial restrictions on dissemination. There is no case. Your argument is. Well, waiver helps not necessarily by itself, but necessarily by what the other party's interpretation of the agreement was. And I'm not following you. Okay. So are you arguing waiver by omission, basically? No, I'm arguing waiver by, well, waiver can be inferred by a course of conduct. Doesn't waiver generally have to be pretty clear and unambiguous? It can, well, waiver can be gleaned from circumstantial evidence. It can be inferred by a course of conduct. It does not have to be established by a statement. The waiver cases that we have cited and that the other circuits have relied on all look to this exact same kind of conduct. When you say all, you told us to. So is that your definition of all? The image wear case is the two strongest cases, the two clearest cases are National Polymer Products and the Little John v. BIC. So when you say all, are you referring to those two? I'm also referring to image wear and polyquin. Polyquin addresses different categories of information that the plaintiff sought to use post-trial, and all of the information that was admitted at trial, the court held, was fair game for the plaintiffs to use post-trial without restriction. The categories of information that it restricted were those that had not been admitted at trial. Were any of these cases involving a published study after the fact or a book or anything where there would be widespread publication of the information? Yes. The National Polymer Products case was a situation where one of the plaintiffs, the executive of the company, established an institute which he was going to then use, take the defendant's what had been, in fact, confidential information. There was no dispute about that. And he was going to disseminate that confidential information to the defendant's competitors. So it was going to be a very broad dissemination. The BIC case was similar to this in that it was a product liability case where there was a public interest in having the information about BIC circulated widely. Here, this study is the only one of its kind that has identified and described a way of measuring accurately grip forces. Grip forces are a risk factor for workplace injuries, but it remains controversial to regulate those. And the reason is that measuring grip forces, assessing them, is difficult. Dr. Rempel has finally come up with a way of measuring those that is very accurate. So it would advance this effort to regulate workplace exposures to these forces that cause upper extremity injuries. Isn't the law clear and unambiguous that you cannot grant summary judgment unless the contract terms are clear and unambiguous? Yes, that is correct. That's your position? Yes, and also you cannot grant summary judgment where there is a disputed issue. We don't have to decide in this whether you win or whether your opponent wins. We merely decide whether or not the district court judge was wrong in granting summary judgment to a contract that was not clear and unambiguous. That's correct, and the same principle applies to the waiver issue. I have three minutes left, so I'm going to stop. Thank you, counsel. Good morning, and may it please the court. Steven Feldman for the respondents in this case. Counsel, could you please speak up? Yeah, I will try to. You know, it's unbelievable that lawyers don't project their voice when they're talking. Well, I have a little bit of trouble. See, you were here earlier when we said that's not a microphone. So you've got to talk to us, not to that instrument in front of you. I will try to project. I want to very briefly touch on the waiver point and then come back to it, just because it's fresh here. And I want to make initially the point that Dr. Rempel is not asking for summary judgment on the waiver claim. The only thing he has asked for or argued is that there is a disputed question of fact on waiver. So if this court reaches the waiver argument and decides that there is a question of fact, the appropriate course of action, obviously, is then to remand it. But Dr. Rempel is not even asking that the court find as a matter of law that there has been a waiver. And also, briefly on the waiver point, regarding the National Polymer case that was just cited, even in that case, the court, where there already had been a disclosure of the confidential information, what the trial court did was issue an injunction saying, I want you to return that information and you cannot disseminate it any further. What the Sixth Circuit said was, well, we can't decide whether what happened there was a waiver or not. All they said, and the opinion said, they just said whether the injunctive order entered below after trial can be upheld, cannot be determined at this stage of the proceedings. And it remanded for a balancing of the interests of confidentiality on one hand, and on the other hand, public disclosure. And so that just serves to emphasize that even in a case like that, where there had been a clear, there had already been a further publication of an unsealed confidential document, the Sixth Circuit wasn't willing to find waiver as a matter of law. And I will hopefully come back to the waiver cases and explain why they are distinguishable from our case. And what I want to do first is address the initial argument that this agreement at issue does not even apply to Dr. Rempel's study. And we believe, as the district court did, that it clearly does. That the agreement in paragraph one has two separate sentences. Each stands on its own. And the second sentence, we believe, is clear and unambiguous. And it says that results of any inspection of the dyad, quote, shall not be disclosed for any purposes other than the product liability litigation involving the dyad brought by the package car drivers. And there's no- Counsel. Yes. You said the results of the inspection of the dyad. Is that really in the agreement of the dyad? That is not, actually. And I started the quote from shall not be disclosed. And you can, reading this agreement, it's clear that what they're talking about in terms of the results of the inspection is the inspection of the dyad. And from the preamble of the agreement, it talks about we're entering into this agreement specifically because we are turning over to you the dyads for inspection. And we need this agreement because of their highly sensitive and proprietary value. In addition to turning over the physical object, the dyad, was there documents turned over, plans, drawings? Was there confidential information other than the dyad? Well, there was also a diva, which is the dyad holder. But that, too, is a device that's mounted in a UPS truck. But there were no documents. This agreement was entered into because the plaintiff package car drivers wanted access to the dyad for testing by their expert witnesses, one of whom was Dr. Rempel, who subsequently read this agreement and agreed in writing to be bound by it. So the production was the dyad itself. And UPS, at that point, did not know what type of testing the experts were going to do. So, you know, whether things would be examined, et cetera. So we believe that there's no dispute here that…  Okay. There are two things, then, that could have been discovered by turning over the physical objects. One would be whatever confidential information was used to produce them. And the other would be whatever was discovered as a result of opening them up and looking at the interior. Is that right? And doing whatever form of testing that was going to be done. Yes. That is absolutely correct. And Paragraph 1 of the agreement reflects that very point, that there is a prohibition on disclosure of confidential information in Sentence 1, and then a prohibition on the disclosure of the results of any dyad inspection more generally in Sentence 2. And I believe, as the Court was pointing out, reading Sentence 2 of Paragraph 1 would, as Dr. Rempel proposes, that it applies to confidential information gleaned as a result of dyad inspection. That would directly contravene two separate well-established rules of contract instruction in Oregon. The first of which is that a court, in interpreting a document, looks at the language in the document, and the court is not permitted to insert terms that are not contained in the text of the document. And here, reading the second sentence to cover confidential information would require the insertion of, I think, two terms. First and foremost, confidential information. That term is not in the second sentence, although it easily could have been included. It would have been very easy for counsel if they intended that sentence to apply to confidential information gleaned as a result of a dyad inspection. They could have simply inserted the term confidential information. Secondly, in the briefing, Dr. Rempel argued that you need the second sentence to make sense of the first sentence, that it modifies and qualifies the first sentence, and that the court should reach that result by including a provided however qualifier, saying, well, you have confidential information that you can't use under the first sentence, but you can use it in certain circumstances as evidenced by the second sentence. But there is no provided however qualifier. They're two distinct sentences set off by periods, and each stands on its own. Why should the jury decide this case? Broadly, because the contract, as the district court found, is clear on its face. What if he was wrong? If he was wrong? Well, if he was wrong. See, you've got two people who come up before him and say that I intended this, and the other guy says I intended that. And the judge bases it not upon looking them in the eye, not upon listening to their testimony in court, not listening to cross-examination, not listening to all the elements to go into who's telling the truth, but on words that are written on a piece of paper. Now, which is the best way to determine something which is in dispute? Well, under Oregon law, which this agreement is governed by, there's a very specific methodology for interpreting a contract, and it's mentioned in both parties' briefs. It's the Yodman case. Well, the question in this case is who's telling the truth? My intent was this, and the other one says my intent was that. Is this not this case? Well, I don't believe exactly. Does it have nothing to do with intent? Well, it does. What did I intend to do with these words, what these words mean? The ultimate issue that this court and the district court is trying to ascertain here is what was the intent of the contracting parties in entering into this agreement? But there's a specific three-step methodology to determine what that intent was. Step one is you look at the document and you look at the disputed provision. Looking at it in the context of the- See, I'm talking about credibility of witnesses, and you cannot determine credibility of witnesses by motions for summary judgment. And I believe that that is true. All right. I believe that the credibility aspect here doesn't come into play under Oregon law in interpreting a contract, at least not at the first step in this Yodman analysis, which the court- Only if the court finds that there's an ambiguity in the text does the court get into extrinsic evidence of what the parties intended. Here, the district court, just on the face of the document, which I believe was correct, concluded that this sentence in paragraph one is clear and unambiguous, and I can ascertain- Well, you say that, but the other side says no. And who determines that when credibility of witnesses are an issue? It is a question of law for the court to determine, and I don't think credibility comes into it. Only in the event that the court looks at the agreement on its face and finds an ambiguity do you get into extrinsic evidence. How big an ambiguity needs to exist before you're not entitled to a reversal of a summary judgment? How much credibility? I believe that- If you're 90 percent, they're 10 percent? I think it's crystal clear what this second sentence says, that it applies to the results of any inspection of the dyad, and they can only be disclosed within the context of the dyad litigation. It's what the district court found, and I think it's the only result that makes sense. And to briefly talk, the second issue, the second rule of contract instruction, that interpreting that sentence in any other way would violate it. It was mentioned by Your Honors that a contract must be interpreted so as to give effect to every provision in it. And if you read the second sentence to encompass only confidential information that's revealed as a result of an inspection of the dyad, then the first sentence is rendered superfluous, because the second sentence would then alone be defining the parameters for disclosure of confidential information, and the first sentence would not be defining anything. So for that reason, as well as the fact that the sentence just standing on its own is clear, we believe that the district court correctly concluded that the contract is unambiguous. Isn't it the rule that you must be absolutely certain, absolutely certain, before you're entitled to summary judgment of contract interpretation? Is that the rule or not? I mean, yes or no? Well, I don't believe that in Oregon. In Oregon, at least, I don't believe that. If you answer yes or no, then explain. No. All right. You don't have to be absolutely certain. Well, it's the judge that needs to decide that question, and the judge needs to be able to determine that there's no genuine issue of fact as to whether this agreement is or is not ambiguous. There's a specific methodology which was followed here, and the only – and to create a genuine issue of fact, a reasonable jury must be able to find that the other side's interpretation is reasonable as well. Intent of the parties has nothing to do with this. Intent of the parties only comes in if there's a finding that the agreement is ambiguous on its face. And here, there is – both sides have submitted evidence, extrinsic evidence of the contracting party's intent, and we believe that if – you don't need to reach that. But if you do reach it, and you look at the testimony of the drafter, of the negotiator and drafter of the agreement for UPS, and that of the plaintiff package program, the testimony of the UPS drafter is completely consistent with what's clear on the face of the agreement. Mr. Mark, who negotiated the agreement for the package car drivers, he claims that the reason why the second sentence came into being was to make sure that other cases down the road would be able to use – the plaintiffs in those cases would be able to use the confidential information that was gleaned from a diet inspection. But that actually makes no sense, because if you look at the agreement, at the very end of the first paragraph, it talks about – it lists four cases, but then says that this agreement applies to those four cases for any related litigation. So it was already determined that the diets they were inspecting, that information could be used in these four cases or any other diet cases. What it couldn't be used for was any other purpose, including, as in this case, a publication of the results of the diet study in a scientific journal. Counsel, were you going to discuss the waiver issue in more detail, including addressing the cases referenced by opposing counsel? Yes, I was, and I will turn to that now. The waiver issue here – the law of waiver in Oregon, there has to be a conscious relinquishment of a contractual right. And waiver, as this Court noted earlier, has to be clear and unequivocal. For there to be a waiver, there must be an absolute clear indication that a party is voluntarily or intentionally relinquishing its contractual right. So, counsel, you don't disagree that there can be a waiver by conduct? I agree that there can be. And so what is your position regarding whether or not the conduct in this case, on the part of your clients, constituted a waiver? I believe it's clear that it did not establish a waiver. And beyond that, I don't think that UPS's conduct in this case even remotely evidences a waiver. What Dr. Rempel has pointed out are three alleged acts that constitute a waiver. The first one was a disclosure of the study to Dr. Rempel's employer at the University of California. And that disclosure clearly doesn't evidence a waiver because the sole reason that the study was disclosed to the University of California was to seek their assistance in enforcing and preserving UPS's rights under the agreement. I think the waiver conduct that's been most heavily relied upon was the failure to have the document sealed following litigation. So could you address that, please? Yes, and that point, UPS's failure to have this document filed under seal does not even evidence a waiver because that conduct is completely consistent with the terms of the agreement. UPS had agreed that the results of the dyad inspection, like Dr. Rempel's study, could be used within the context of the dyad litigation. That was what UPS was willing to live with, and that was expressly contemplated and authorized by the agreement. So by not moving to seal it, UPS was simply acting in accordance with the agreement. How does that differ from the cases cited by opposing counsel where the failure to seek a filling of the documents was held to constitute a waiver? Right, and I think that there's actually four separate reasons why the National Polymer case and the Littlejohn case are distinguishable from this case. You have one minute and 45 seconds to tell us why. Okay. First, those cases are cases that involve whether the filing of the document, whether that by itself strips that document of its confidential status and allows other people then to go and access it and disseminate it. This case is very different because UPS specifically entered into a contract with the plaintiffs and their expert witnesses that bound them not to disclose confidential and other non-confidential information. And the fact that the study is filed, even if that did strip it of its confidential status, that would in no way negate UPS's ability to enforce paragraph two, sentence two of paragraph one, that we have a right, we've told you specifically you can only disclose non-confidential and dyad inspection results in the context of the litigation. Secondly, I believe the actual correct statement of the law, which we cited at length in our brief, was by the Post case out of the Fourth Circuit, which postdates National Polymer and Littlejohn, which says that the filing of a document alone cannot constitute a waiver without absent evidence of further publication. And here there has been no further publication, which there was in both Littlejohn and National Polymer. And the final point is that the study has not been admitted into evidence, which was significant in all those cases, distinguishing whether the document was admitted into evidence as opposed to merely filed in the court. All right. Thank you. You cited a Fourth Circuit case. Did that case involve a court's arising under federal law jurisdiction, or was that case a diversity case trying to interpret one of the states in the Fourth Circuit's law? I believe it was interpreting South Carolina law. But I also believe that if you review the opinion, it was relying on several other federal cases that reached that exact same conclusion. But in any of these cases, are they all trying to interpret the law of the state in a diversity case? I cannot accurately say. That's usually what's involved in a contract dispute. I would think that that's probably correct, but I can't speak for all the cases. Okay. Thank you, counsel. Rebuttal. One point on the issue of the contract interpretation. Reading from the agreement itself, it states in the background section, and this goes again to my point that this agreement concerned confidential information and not non-confidential information, as UPS is arguing. In the background, it says, Claimants are about to be granted limited access to confidential information. That was the dyad and the diva. That is what this agreement was about. That is in the first paragraph under background. And then in consideration of the grant of access referred to above. And it states the conditions. On the waiver issue, there's been a suggestion here and also in UPS's brief that Oregon's waiver law is somehow unique. Oregon's waiver law is your standard garden variety waiver law. The cases that I cited are cases where waiver was found by a course of conduct of a party failing to enforce some contract agreement. So it's the conduct of omission, which was your question earlier. But each of those cases dealt with an interpretation of the law of the state in the diversity case. Yes. And in the waiver cases that involve the post-trial dissemination, they do all arise under diversity. But Oregon's waiver law is quite ordinary. Counsel, do you agree with opposing counsel that the document at issue here, the study, was not admitted into evidence at trial? It was not admitted into evidence at trial. It was testified to in detail. Dr. Rempel was on the stand for a day and a half. That testimony was about the study, and that is exactly what these cases talk about. Do those cases involve evidence that was, in fact, admitted at trial, though? They talk about deposition testimony read into the record. They talk about evidence that made it into the judicial record at trial. And in some of the cases, it's testimony. In some of the cases, it's evidence. And in some of the cases, it's both. They treat it interchangeably. So you say your cases also address the situation where the information was not admitted at trial? No. The waiver is never found where information is. The case is distinguished between discovery information that never becomes part of a judicial record, on the one hand, and information that does become part of the judicial record. This study is part of the judicial record in the side case here in this court, and also in cases in other parts of the country. This study itself was admitted into evidence? It has been admitted into the court files. It was not admitted as an exhibit at the trial, but it is in the court files. I want to quickly talk about, mention this, the hoaxed and the Gates rubber cases, which are cases where waiver was not found. Those cases were true trade secret cases. So what was at issue was truly confidential proprietary information. And those cases help us because what happened in both cases was the parties seeking secrecy took extreme measures to maintain the secrecy of the information during the hearing and post-hearing. All right, counsel. Thank you very much. The case just argued stands admitted. The next case on calendar for argument is Miller v. The Kroger Company. Counsel, please proceed.
judges: Alarcon, Ferguson, Rawlinson